IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

TRACY LATRICE WALKER, )
)
)
Plaintiff, )
)
vs. ) CIVIL ACTION NO. 5:17-CV-3 (MTT)
)
ALDI FOOD MARKET INC., *et al.*, )
)
)
Defendants. )
)

## ORDER

Defendant Aldi Food Market Inc. moves for summary judgment on the Plaintiff's only remaining claim. For the following reasons, that motion (Doc. 26) is **GRANTED**.

## I. BACKGROUND

Plaintiff Tracy Walker started working at Aldi as a store associate on April 15, 2016. Doc. 28-5 at 34:7-23. Aldi hired her to work at a new store in Milledgeville, which was set to open in May 2016. *Id*. She trained at Aldi's location in Covington, Georgia, under Deb Shupe. *Id*. After ten days she was promoted to shift manager by Shupe and Synticee Denmark, a regional manager.[1] *Id*. at 34:24-35:1, 36:1-37:4; Doc. 26-5 ¶¶ 3-4. A shift manager would typically continue to work some shifts as a store associate, while working some shifts as a shift manager. Doc. 28-5 at 41:19-43:12. For instance, a shift manager would work a store associate shift (meaning a shift with store associate duties and pay) if a store manager was scheduled to work at the same time. *Id*. at 41:19-

---
[1] Shupe claims, and the Plaintiff does not dispute, that Shupe decided the Plaintiff should be promoted and discussed that promotion with Denmark. Doc. 26-5 ¶ 5.

43:12, 79:21-80:1. If two shift managers were scheduled, one would work as a store associate instead. *Id.* at 43:3-12. When working a shift as a manager, a shift manager would often be responsible for opening or closing the store. *Id.* at 41:7-18.

On May 2, 2016, the Plaintiff was transferred to a new store in Milledgeville. *Id.* at 43:13-44:3. Shupe was also transferred to the Milledgeville store for its opening. *Id.* Shupe testified that shift managers on closing shifts were expected to complete work and clock out by 8:30 p.m., due to low sales, even though they were scheduled to work until 9:00 p.m. Doc. 26-5 ¶¶ 16-17, 19. Shupe says that she communicated this expectation to the Plaintiff during June and early July of 2016. *Id.* However, on several occasions, the Plaintiff clocked out after 8:30. Doc. 26-4 at 52. Because she was scheduled until 9:00 p.m., the Plaintiff testified that she now believes the expectation was to work until 9:00 p.m., but that she cannot remember whether Shupe or anyone else told her to leave at a certain time. Doc. 28-5 at 55:11-59:6. She testified that she does remember conversations with Shupe about being out of the store by 8:30 p.m., but does not remember when those conversations took place. *Id.* at 64:11-24.

The Plaintiff, Shupe, and other employees had a meeting on July 26, 2016, and Shupe claims she reiterated her expectation that employees close out by 9:00 p.m. *Id.* at 63:18-64:16; Doc. 26-5 ¶¶ 23-24. According to Aldi's time records, the Plaintiff clocked out at 9:06 p.m. that night. Doc. 26-4 at 52.[2] The Defendant has adduced evidence that at a meeting on July 28, 2016, the Plaintiff was told she would receive one-on-one training with Shupe to observe Shupe performing her closing duties, during which time she would be assigned store associate shifts. Docs. 26-5 ¶¶ 26-29. The

---

[2] The Plaintiff testified that she did not "know if these records are accurate," but she did not contradict them. *See* Doc. 28-5 at 65:4-15. She stated she could not recall the time she clocked out. *Id.*

Plaintiff acknowledged there was a conversation about being retrained but disputed that it was at the July 28 meeting. Doc. 28-5 at 66:4-67:15. The Defendant says the Plaintiff was told that she would get more management shifts once she was able to clock out on time. Doc. 26-5 ¶ 28; *see* Doc. 28-5 at 66:4-67:15. The Plaintiff was allowed to keep her shift manager shirt and keys. Docs. 26-5 ¶ 34; 28-5 at 70:23-71:11. The Plaintiff, however, testified that Shelby Ward-Fitzgerald, the regional manager who replaced Denmark, told her she was being demoted. Doc. 28-5 at 65:21-23, 71:22-76:1.

In late July, the Plaintiff requested a transfer to a different store. Docs. 26-6 ¶ 17; 28-5 at 131:3-132:24. That transfer was granted and was effective on August 15, 2016. *Id.*; Doc. 28-5 at 135:16-136:5. After the transfer, the Plaintiff continued to work until November 2016, when she was terminated for missing work. Doc. 28-5 at 172:19-178:17.[3]

The Plaintiff brought this lawsuit pro se against Defendant Aldi Food Market, claiming her alleged demotion in July 2016 was the result of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. *See generally* Docs. 3; 6; 8. After screening and the Court's dismissal of two individual defendants, only the Plaintiff's racial discrimination claim against Aldi remains. Docs. 9 at 2; 21 at 1-2. The Defendant now moves for summary judgment on that claim. Doc. 26.

## II. Summary Judgment Standard

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of

---

[3] The Plaintiff's EEOC charge, which is the only one she filed, was limited to alleged discrimination occurring between July 27, 2016 and August 9, 2016. Doc. 28-5 at 51:6-53:1.

material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A material fact is any fact relevant or necessary to the outcome of the suit. *Id.* at 248. And a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Id.* (citation omitted). Accordingly, "the mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1243 (11th Cir. 2001) (citation and punctuation marks omitted).

The party moving for summary judgment bears the burden to show that there is no issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may make this showing by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that the non-movant cannot produce admissible evidence to support the issue of material fact. Fed. R. Civ. P. 56(c)(1). If the movant meets this burden, the non-moving party must produce evidence showing that an issue of material fact does exist. *Celotex Corp.*, 477 U.S. at 324. To do so, the non-moving party must "go beyond the pleadings" and identify "specific facts showing a genuine issue for trial." *Id.*; *see also* Fed. R. Civ. P. 56(e)(2)-(3). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255 (citation omitted).

Upon receipt of the Defendant's motion for summary judgment, the Court notified the Plaintiff that Local Rule 56 requires a party opposing summary judgment to file a concise statement of material facts responding to the numbered paragraphs of the moving party's statement. Doc. 27. The Plaintiff's response fails to comply with Local Rule 56. *See* Docs. 28; 28-1; 28-2; 28-3; 28-4; 28-10; 28-11. However, as required, the Court has still "review[ed] the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (citation and quotation marks omitted). And despite the deficiencies in the Plaintiff's response, because the Plaintiff is proceeding pro se, and because summary judgment would lead to dismissal of her claims with prejudice, the Court has fully considered her claims for relief regardless of these failings and insufficiencies in her response. *See United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed [or improperly opposed], but, rather, must consider the merits of the motion." (citation omitted)). Therefore, if evidence in the record shows that a fact is disputed, the Court draws all justifiable inferences in the Plaintiff's favor for purposes of summary judgment.

### III. TITLE VII CLAIM

**A. *McDonnell Douglas***

A Title VII plaintiff may prove her case circumstantially when there is no direct evidence of discrimination. The framework for analyzing circumstantial evidence to establish discrimination is found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. If a plaintiff establishes that prima facie case, the burden of

production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). This burden of production means the employer "need not persuade the court that it was *actually* motivated by the proffered reasons" but must produce evidence sufficient to raise a genuine issue of fact as to whether it discriminated against the plaintiff. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added) (quotation marks and citation omitted).

A plaintiff then has the opportunity to show that the employer's stated reason is a pretext for discrimination. This may be done "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "If a plaintiff produces sufficient evidence that the employer's proffered reason is merely pretextual, that evidence may sometimes be enough to preclude summary judgment in favor of the employer." *Kragor*, 702 F.3d at 1309.

In the case of termination or demotion based on race, the *McDonnell Douglas* framework requires proof of four elements to establish a prima facie case:

> [A] plaintiff makes out a *prima facie* case by showing that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he experienced an adverse employment action, and (4) he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class.

*Smith v. Mobile Shipbuilding & Repair, Inc.*, 663 F. App'x 793, 799 (11th Cir. 2016); *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275-1276 (11th Cir. 2008); *see also Paye v. Sec'y of Def.*, 157 F. App'x 234, 236 (11th Cir. 2005); *Maynard v. Bd. of Regents of*

*Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

The Defendant does not dispute that the Plaintiff was qualified or that she is a member of a protected class. *See generally* Doc. 26-1. For the purposes of this motion, therefore, the Court will consider those elements met. Rather, the Defendant claims that the Plaintiff has not made out a prima facie case because there was no adverse action and the Plaintiff was not replaced by someone outside her protected class. The Court considers each argument in turn.

*1. Adverse Action*

The Defendant's argument that the Plaintiff did not suffer adverse action fails because the Plaintiff adduced evidence that Mrs. Ward-Fitzgerald told her she was being demoted.[4] Doc. 28-5 at 71:22-76:1. As the Defendant notes, it is undisputed that the Plaintiff requested additional training. *Id.* at 63:9-14, 68:15-22, 84:12-16. It is also undisputed that no one at Aldi ever told the Plaintiff she would never receive shift manager hours again. *Id.* at 84:9-11. Nonetheless, the Plaintiff testified that Ward-Fitzgerald told her she was demoted. Although there is some evidence suggesting she was not demoted—such as the fact she kept her manager shirt and manager keys (Docs. 26-5 ¶ 34; 28-5 at 70:23-71:11)—the "weighing of the evidence[] and the drawing of legitimate inferences from the facts are jury functions." *Anderson*, 477 U.S. at 255

---

[4] Even without the evidence of demotion, reassignment of duties can satisfy the standard for adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70-71 (2006) ("Almost every job category involves some responsibilities and duties that are less desirable than others. . . . Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." (quotation marks and citation omitted)).

(citation omitted). Accordingly, the Plaintiff has sufficiently established that she suffered an adverse employment action.

## 2. *Comparator or Replacement*

A plaintiff may satisfy the fourth element of a prima facie case for discriminatory demotion by showing either that she received less favorable treatment than a similarly situated employee or that she was replaced by someone outside her protected class. *Rioux*, 520 F.3d at 1275-76 (noting both formulations of the *McDonnell Douglas* test in the demotion context).

The Plaintiff has not identified a similarly situated employee. The Defendant has adduced evidence that no other shift managers had the same issues with clocking out late on closing shifts as the Plaintiff. Docs. 26-5 ¶¶ 35-36; 26-6 ¶¶ 15-16. The Plaintiff admitted she does not know the clock-out times of other shift managers or whether they experienced similar issues with clocking out later than 8:30 p.m.[5] She has not, therefore, shown she was treated less favorably than a similarly situated person outside her protected class.

The Plaintiff claims she was replaced in her shift manager position by Cathy Todd.[6] Doc. 28-5 at 88:10-89:9. The Plaintiff claims that Todd began working management shifts before the Plaintiff left the store. *Id.* at 91:15-21. Notably, the Plaintiff makes no claim to have personal knowledge of when Todd began working shift

---

[5] As the Plaintiff notes, the closing shifts were usually scheduled until 9:00 p.m. Doc. 28-5 at 55:11-59:6. The Plaintiff suggests that encouraging employees to clock out at 8:30 p.m., and punishing them for not doing so, is improper given a 9:00 p.m. schedule. *Id.* That suggestion may or may not have merit, but Aldi asserts, and the Plaintiff does not dispute, that shift managers at the Milledgeville store "were expected to complete their closing duties and clock out by 8:30 p.m. each night." Doc. 26-5 ¶ 16.

[6] Cathy Todd was named Cathy Goodrich at the time, but she has since married and changed her name. Doc. 28-5 at 88:10-89:9.

manager shifts, but claims instead to have "schedule proof." *Id.* at 92:20-93:7. Her testimony she was replaced with Todd, therefore, merely states her inference from the schedules. *Id.* As discussed below, however, the schedules contradict that inference. Doc. 28-11 at 3-5.

The Defendants have provided undisputed testimony that there was no limit to the number of shift managers in a given store and that there were three shift managers in Milledgeville as of late July, 2016. Doc. 26-5 ¶¶ 43-44. The Plaintiff, therefore, must rely on the timing of Todd's promotion to show the Plaintiff had been replaced or that her duties had been assumed by Todd. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987) (noting the element of replacement may be satisfied when someone outside of the plaintiff's protected class assumes some, but not all, of her duties).

The schedules submitted by the Plaintiff in fact show that Cathy Todd did not work any shifts as a paid shift manager[7] until at least after August 14, 2016, by which time the Plaintiff had been transferred, by her request, to a different store. Docs. 26-6 ¶ 17; 28-5 at 131:3-132:24, 135:16-136:5; 28-11 at 3-5.[8] Also, the Defendant provides undisputed testimony that the decision to promote Cathy Todd was made "in late June

---

[7] The schedule has Cathy Todd scheduled for store associate shifts only through July 3, 2016. Doc. 28-11 at 3. The schedule has her listed as a "Training Shift Mgr" starting on August 1, 2016. *Id.* at 4. The Plaintiff has not submitted schedules for dates between July 3 and August 1. *See* Docs. 28-11; 28-10 at 33-43. All of Cathy Todd's training shift manager shifts were scheduled to overlap with Deb Shupe (Doc. 28-11 at 4-5), and because there was only one manager per shift, Todd would have been paid as an associate. Docs. 29-5 at 34:20-21, 37:21-39:3, 41:19-43:12, 79:1-80:15; 26-5 ¶ 42.

[8] The work schedules, which the Plaintiff submitted, were filed with the Clerk's Office as of August 1, 2018, and the Docket location 28-7 was titled "Employee Schedule" with a notation that hard copies were available on a shelf in the Clerk's Office. However, Doc. 28-7 contained a scanned copy of the Plaintiff's earnings statements, which were also available at Doc. 28-8. The hard copy on the shelf in the Clerk's Office, which did contain work schedules, was scanned on December 19, 2018, and added to the Court's electronic case filing system (ECF) at Doc. 28-11.

or early July 2016." Doc. 26-5 ¶ 41.  That decision was made, therefore, before the decision to retrain (or demote) the Plaintiff and, apparently, before the Plaintiff's late clock-outs began.  *Id.* ¶¶ 39-41; 26-4 at 52.  The Plaintiff admits that apart from the schedules, she does not have evidence she was replaced with Todd, and the schedules do not show she was replaced with Todd.  *See* Doc. 28-5 at 88:25-94:20.  The Defendant, on the other hand, has adduced evidence that "[t]he decision to promote Ms. Todd to a Shift Manager position had nothing to do with Ms. Walker or the decision to provide Ms. Walker additional Shift Manager training."  Doc. 26-5 ¶ 39.  The Plaintiff has failed to show she was replaced by Cathy Todd and has not, therefore, established a prima facie case.

### 3. Legitimate, Nondiscriminatory Reason

Even if the Plaintiff could make out a prima facie case, her claim would still fail because Aldi has proffered a legitimate, non-discriminatory reason for her alleged demotion and the Plaintiff has not produced evidence showing that reason is unworthy of credence.  According to Aldi, the Plaintiff failed to meet Aldi's expectations regarding when to clock out.[9]  Doc. 26-1 at 7-8.  Because the Milledgeville store had low sales volume, shift managers were expected to complete their closing duties and clock out by 8:30 p.m., which kept the payroll from increasing.  Doc. 26-5 ¶¶ 16-17, 19.  The Plaintiff's supervisor told her she was expected to clock out by 8:30 p.m.  *Id.* ¶ 18; Doc.

---

[9] Nowhere does the Defendant specifically claim that it *demoted* her due to her tardiness in clocking out late.  That is because both of the Defendant's other employees who were present at that meeting claim the Plaintiff was never demoted at all (Docs. 26-5 ¶ 32; 26-6 ¶ 13), and the Defendant contests that the Plaintiff was demoted as part of its argument that the Plaintiff did not experience adverse employment action (Doc. 26-1 at 4-6).  Nonetheless, the parties are agreed that the Defendant stopped scheduling shift manager shifts for the Plaintiff, and the Defendant clearly argues the reason for that is the Plaintiff's failure to clock out by 8:30 p.m.  Thus, however the Plaintiff's removal from shift manager shifts is characterized, the Defendant argues that the removal from those shifts was the result of the Plaintiff's repeated failures to clock out on time.

28-5 at 64:11-24. From July 11 to July 26, on eight shifts, the Plaintiff did not clock out by 8:30 p.m. Docs. 26-5 ¶¶ 22, 26; 26-4 at 52. The Plaintiff's supervisor and Aldi's regional manager both testified by affidavit that the Plaintiff's removal from shift manager shifts for retraining resulted from her failure to clock out by 8:30 p.m. Docs. 26-5 ¶¶ 16-27; 26-6 ¶¶ 2, 9-12. The Defendant has carried its burden of providing a legitimate, nondiscriminatory reason for the alleged adverse action.

The Plaintiff may rebut the Defendant's legitimate, nondiscriminatory reason by "showing the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. The Plaintiff has failed to do that here. At her deposition, she could not recall whether or not she struggled with clocking out late. Doc. 28-5 at 84:17-21. She acknowledged that she believed she needed additional training for the shift manager position and that she requested additional training for that position. *Id.* at 84:12-16, 68:15-22. In short, she has not called into question the Defendant's assertion that she was removed from shift manager shifts due to her tardiness in clocking out on those shifts.

Under the *McDonnell Douglas* framework, the Plaintiff has failed to make out a prima facie case, and even if she could make out a prima facie case, she has not shown the Defendant's proffered reason is unworthy of credence.

**B. Convincing Mosaic of Circumstantial Evidence**

Although the Plaintiff fails to successfully navigate the *McDonnell Douglas* framework, the Court recognizes that "establishing the elements of the *McDonnell Douglas* framework is not . . . the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin*

*Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff can always survive summary judgment by creating a triable issue concerning the employer's discriminatory intent. A plaintiff does this by presenting "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)). However, the Plaintiff has not presented such evidence here.

The Plaintiff cites four incidents which, she alleges, demonstrate racial discrimination. In the first, on or around July 5, 2016, Deb Shupe "always cracked jokes, and she was cracking a joke, and she said . . . 'When you get done with your job duties, when you get finished, why don't you go put your monkey suit on?'" Doc. 28-5 at 97:1-13. The Plaintiff interpreted that as a racist comment, though she did not know what Shupe meant by it. *Id.* at 98:19-102:1. The Plaintiff does not recall other comments by Shupe or by other managers at Aldi which she interpreted as racially discriminatory. *Id.* at 110:8-19.

In the second incident, an elderly African-American customer came to the store and was having trouble getting a grocery cart. *Id.* at 105:1-20. Emily Snyder, a white employee, was working the cash register at the check-out line, and the Plaintiff was working on "the floor [meaning store aisles] . . . double-checking things." *Id.* at 105:1-106:21; Doc. 28-3 at 9. Snyder moved to help the lady. Doc. 28-3 at 9. Shupe, who was also working that day, asked the Plaintiff—rather than Snyder—to assist the customer with the cart, and she asked Snyder to go back to the check-out line to take care of other customers. Docs. 28-5 at 105:1-20; 28-3 at 9. The Plaintiff took that as racially discriminatory. Doc. 28-3 at 9. However, the Plaintiff, at her deposition, also

testified that she was not helping other customers at the time, and she did not know whether or not Snyder was helping other customers at the time. Doc. 28-5 at 105:25-109:25. By the time Snyder arrived back at the check-out station, customers were approaching her and placing items on the conveyor belt for check-out. Doc. 28-3 at 9. The Plaintiff testified she does not really know why she was asked to help the woman with the carts. *Id.* at 110:1-7.

In a third incident, the Plaintiff claims in an affidavit she was asked to clean restrooms and scrub floors more than other employees. Doc. 28-3 at 1. At her deposition, however, the Plaintiff admitted she did not know what other employees were doing most of the time or how the time she spent doing undesirable tasks compared to the time other employees spent doing undesirable tasks. Doc. 28-5 at 248:8-252:3.[10]

In the final incident, Deb Shupe once told the Plaintiff a story about a time she was on a train and "an African American man . . . might have said something to her or tried to get her to go somewhere with him and I guess it made her uncomfortable." *Id.* at 124:22-125:17. Shupe told the Plaintiff that the incident resulted in Shupe's father being prejudiced against African-Americans. *Id.* at 125:13-17. Shupe did not say the man's race was the reason she had felt uncomfortable on the train. *Id.* at 125:18-21.

---

[10] Where an affidavit contradicts prior deposition testimony without a valid explanation, a party cannot rely on the affidavit to create a fact issue. *See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). On the other hand, "[t]his rule is applied sparingly because of the harsh effect [it] may have on a party's case . . . [a]s such, our cases require the court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (quotation marks and citations omitted). Given the Plaintiff's deposition testimony that she had no way to compare her duties during store associate shifts to those of other employees, there is probably an inherent inconsistency between the deposition and the affidavit. Even ignoring that inconsistency, however, the Plaintiff still has not shown a convincing mosaic of circumstantial evidence.

Taken together, those incidents do not establish a convincing mosaic of circumstantial evidence which would allow a jury to conclude Shupe had been demoted because of her race. Although the first of the comments could potentially support an inference of animus, the Plaintiff has not provided evidence linking that potential animus to her alleged demotion. *See Awaad v. Largo Med. Ctr., Inc.*, 564 F. App'x 541, 544 (11th Cir. 2014) (holding that where the plaintiff had failed to show pretext, an isolated racial comment which was unconnected to the alleged adverse action did not create a convincing mosaic of circumstantial evidence).

**C. Other Claims**

The Plaintiff's response to the Defendant's summary judgment motion makes reference to claims for hostile work environment and retaliation. Doc. 28 at 2. Those claims have already been dismissed. Doc. 9 at 3 ("To the extent Plaintiff attempts to allege any other claims in her amended complaint, those claims are dismissed so that only her allegation of race discrimination remains.") Further, no claim for hostile work environment was even raised in the Plaintiff's pleadings to begin with. Docs. 3; 6; 8. And the Plaintiff did not include a claim for hostile work environment in her EEOC charge or obtain a right to sue letter for that claim, so she cannot bring that claim now. Doc. 26-4 at 48-50; *see Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 840 (11th Cir. 2005) (stating Title VII plaintiffs must exhaust administrative remedies). Although the Plaintiff's EEOC charge was apparently prepared without expert help and, therefore, is construed liberally, the facts alleged in the Plaintiff's EEOC charge (Doc. 26-4 at 48) "cannot be said to encompass a hostile work environment claim." *Green*, 152 F. App'x at 841. And even if the Plaintiff could bring a claim for hostile work environment at this

late stage, it would be without merit because the Plaintiff has not presented sufficient evidence to support such a claim.

The retaliation claim was also dismissed. Doc. 9 at 3. Even if that claim had not been dismissed, the Plaintiff does not allege sufficient facts to state a plausible claim for retaliation. *See* Doc. 8. Despite the Plaintiff's reference to retaliation and a hostile work environment in her response, therefore, those claims are not a part of this lawsuit. Doc. 28 at 2.

### IV.  CONCLUSION

For the reasons stated above, the Defendant's motion for summary judgment (Doc. 26) is **GRANTED**. Accordingly, the Plaintiff's complaint (Docs. 3; 6; 8) is **DISMISSED with prejudice**.

**SO ORDERED**, this 27th day of December, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
